# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MATTHEW RONALD CAROVILLANO,

    Petitioner,

    -vs-

WARDEN, Mansfield Correctional Facility,

    Respondent.

Case No. 1:09-cv-225

District Judge Sandra S. Beckwith
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Petitioner Matthew Carovillano brought this habeas corpus action pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction and sentence to life imprisonment without parole imposed by the Hamilton County Common Pleas Court. He pleads three grounds for relief:

> **Ground One:** In Ground One Petitioner will state facts showing why the involuntary confession should be thrown out. During the interrogation with Det. Pat Kemper and Matthew Carovillano on July 22, 2005, there were many offers from Det. Kemper that easily persuaded Mr. Carovillano into giving a confession. Det. Kemper told Mr. Carovillano that if he told the Det. What happened that he would let Mr. Carovillano leave and be able to attend his brother's wedding the following weekend. Now being an officer of law and knowing that if Mr. Carovillano were to confess to such a crime that he would be arrested. Another instance, Det. Kemper told Mr. Carovillano that he could leave any time he would like, but had to unlock the door when his secretary came to bring drinks in. Also, Det. Kemper told Mr. Carovillano that everything said during the interrogation would stay between them, but the whole thing was being recorded without Mr. Carovillano's knowledge. Det. Kemper also stated that he could "smooth thing over" with Sgt. Ferguson and that Mr. Carovillano could get anger management or a lesser charge. Det. Kemper noticed marks around Mr. Carovillano's neck. Before

the interrogation started, he asked Mr. Carovillano what had happened and Mr. Carovillano told him that he tried to commit suicide. Det. Kemper asked how and why, but didn't try to get him any help. He proceeded with the interrogation instead. These are some facts that I (Matthew Carovillano) remember.

**Ground Two:** In Ground Two, Petitioner will state facts showing that Mr. Carovillano was being held in police custody and wasn't properly Mirandized. Within twenty-four hours of the alleged incident, Mr. Carovillano was interrogated six times by police officers. On July 22, 2005, Mr. Carovillano was picked up by two police officers and driven to the Springfield Township Police Department and was interrogated by Det. Kemper for almost three hours with the sole purpose of getting a confession from Mr. Carovillano. At the beginning of the interrogation, Det. Kemper stated to Mr. Carovillano that they were going to "just talk," that he wasn't under arrest. But when the interrogation ended, Mr. Carovillano was indeed arrested. Det. Kemper never gave Mr. Carovillano his Miranda rights at the beginning of the interrogation. Mr. Carovillano was led to believe that he was able to get up and leave whenever he would like, but in this case that wasn't true.

**Ground Three:** In Ground Three, Petitioner will state facts showing that the prosecution did not prove beyond a reasonable doubt that Mr. Carovillano intended to kill Kaylee Schnurr. The State could not prove beyond a reasonable doubt that Mr. Carovillano had every intention of killing Kaylee Schnurr. First, there is no physical evidence linking Mr. Carovillano to the death of Kaylee Schnurr. Second, the only way the State got a conviction was from the illegally obtained confession. Also, the State never proved that Mr. Carovillano's sole intention was to kill Kaylee Schnurr. The State had no evidence to prove that Mr. Carovillano planned to kill Kaylee Schnurr.

(Petition, Doc. No. 1, in attachments.) On Magistrate Judge Hogan's Order (Doc. No. 2), Respondent has filed a Return of Writ (Doc. No. 8). Petitioner has filed no reply and the case is thus ripe for decision.

**Procedural History**

Petitioner was indicted by the Hamilton County grand jury for the aggravated murder of Kaylee Schnurr, the 18-month old daughter of his girlfriend. The indictment contained five counts arising out of the events of July 20, 2005: rape, aggravated murder after committing or attempting to commit rape, aggravated murder of a child under thirteen, murder, and child endangering; the aggravated murder counts carried capital specifications. Petitioner confessed to police on July 22, 2005. After indictment he moved to suppress that confession, but the motion was denied after hearing. He then waived his jury trial right and was tried to a three-judge panel which convicted him of one count of aggravated murder (victim under 13) and child endangerment, but acquitted him on the remaining charges and sentenced him to life without parole. While this case was pending, he was indicted on another count of rape of Kaylee Schnurr for an incident which occurred one week before the beating which resulted in her death. He eventually pled no contest on this charge and received a concurrent life sentence. This latter case is not before the Court.

On direct appeal Petitioner raised two assignments of error: failure to suppress his statements and that the conviction was against the manifest weight of the evidence and insufficient as a matter of law (Appellant's Brief, Ex. 19 to Return of Writ, Doc. No. 8). The Court of Appeals affirmed. *Id.* at Ex. 21. Represented by the Ohio Public Defender, Petitioner unsuccessfully sought review by the Ohio Supreme Court, raising the same three claims he makes here.

## Analysis

When federal constitutional claims are fairly presented to and decided by the state courts, subsequent federal habeas corpus review is deferential.

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005). The Ohio Court of Appeals for the First District was the last state court to render a thoroughly reasoned decision on Petitioner's claims. This Court reviews those claims in light of the Court of Appeals decision, *State v. Carovillano*, 2007 Ohio 5459, 2007 Ohio App. LEXIS 4811 (Ohio App. 1st Dist. Oct. 12, 2007).

### Grounds One and Two: Failure to Suppress the Confession

In deciding that the trial court had not erred in denying Mr. Carovillano's motion to suppress,

the Court of Appeals held

> [*P17] Under the Fifth Amendment of the United States Constitution, "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." Courts have interpreted the Fifth Amendment to require that suspects in police custody be warned of certain rights before questioning. But the *Miranda* warnings are required only when there is a custodial interrogation. In determining whether a custodial investigation had occurred in this case, the trial court had to consider "how a reasonable man in [Carovillano's] position would have understood his situation." The focus of the inquiry should have centered on whether a formal arrest or restraint of freedom had occurred: "The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."
>
> [*P18] When a suspect voluntarily appears for an interview, and when no arrest has been made, then no custodial interrogation has occurred that would require a recitation of Miranda rights. 10 In denying Carovillano's suppression motion, the trial court analogized the facts of this case to those in *State v. Mason*.
>
> [*P19] In *Mason*, a detective stopped by the defendant's house and asked whether the defendant would go to the police station for a second time for another interview, and the defendant agreed. The defendant was transported in a police vehicle to the police station, where he was interviewed by police for approximately four hours. The defendant cooperated during the interview, and at its conclusion the defendant was arrested. Until the arrest, the defendant was never told that he could not leave, and he was never handcuffed, the door was not locked, and he was left alone in the room several times. The *Mason* court held that the defendant had not been in custody and therefore that the police did not violate his *Miranda* rights when they failed to read the *Miranda* warnings before his confession and arrest.
>
> [*P20] In this case, Carovillano agreed to the interview the day before. He was transported to the police station in a police vehicle, but was not under arrest. Until he was arrested after the confession, he was never handcuffed, he was never told that he could not terminate the interview, and he was allowed to leave the interview room to take smoking breaks. While the interview-room door was locked for at least a portion of the interview, we are not persuaded that this converted an otherwise voluntary interview into a custodial interrogation. As we have noted, Carovillano was allowed to leave

the room more than once to take a break and smoke. And throughout the interview, Carovillano questioned the interviewing officer about the likelihood of a future arrest, bolstering the conclusion that he had not been placed in custody. We are convinced that when Carovillano made his incriminating statements, no custodial investigation had occurred, and therefore that his *Miranda* rights had not yet attached.

[*P21] Even if we assume that the Carovillano interview was a custodial interrogation, he was apprised of his *Miranda* rights several times throughout the interview, and he read, signed, and initialed a form waiving his *Miranda* rights. A *Miranda* waiver must be voluntarily, knowingly, and intelligently made--that is, the totality of the circumstances must reveal an uncoerced choice made with a requisite level of comprehension. A signed waiver is presumptively valid--that is, it reflects that the waiver was voluntarily, knowingly, and intelligently made. Carovillano acknowledged during the interview that he was 19 years old, was a high-school graduate, could read and write, and had experience with the criminal justice system. Our review of the record fails to reveal any justification for excluding Carovillano's statements under *Miranda v. Arizona*--Carovillano's *Miranda* rights were not violated because they had not attached when he made the incriminating statements, and even if it is assumed that a custodial interrogation had occurred, Carovillano's waiver of his *Miranda* rights was voluntarily, knowingly, and intelligently made.

[*P22] But even where Miranda rights have not attached, the confession must nonetheless be given voluntarily under the totality of the circumstances. A confession is involuntary if the "defendant's will was overborne by the circumstances surrounding [the confession]."

[*P23] The Ohio Supreme Court has recited the boundaries of coercive conduct that may render a confession involuntary: "A confession is involuntary and violative of the United States and the Ohio Constitutions if it is the product of 'coercive police activity.' 'In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'"

[*P24] The record reveals that Carovillano was alert, responsive, and composed during the interview. The two-hour interview was

neither inordinately long nor confrontational--in fact, the transcript reflects a conversational tone. These factors weighed heavily against suppressing Carovillano's statements. But Carovillano also argues that police offers of leniency and false promises--that he could go home that day if he confessed--were coercive, and that his will was overborne by these circumstances.

[*P25]  As the trial court correctly noted, admonitions to tell the truth are uncoercive in nature--they are neither threats nor promises and are permitted. And the use of deceitful tactics is not dispositive of the inquiry whether a statement was involuntarily induced or coerced; rather it is merely a factor bearing on voluntariness. Likewise, suggestions of leniency, promises that a defendant's cooperation will be considered in the disposition of charges, and statements that a confession will be helpful do not invalidate an otherwise legal confession.

[*P26]  Our review of the record convinces us that, under the totality of the circumstances, Detective Kemper's admonitions to tell the truth and suggestions of leniency did not constitute coercive police conduct. Though Kemper arguably insinuated, before the confession, that Carovillano would not be arrested that day, that suggestion was justified under the facts. It is important to note that in this case, when Carovillano was interviewed, Kaylee was still alive, the police had no suspects or leads, and Carovillano was not under arrest. And if Carovillano had not confessed he would have been free to leave at the time.

[*P27]  Considering the interview in its entirety, we hold that the record reflects a confession free from the level of coercion necessary to convert what was a voluntary confession into an involuntary confession. Carovillano's will was not overborne by this conversational interview; rather, he showed some indicia of what appears to be a conscience and took responsibility for his actions. Carovillano's first assignment of error arguing that the trial court should have suppressed his confession is overruled.

*Id.* at ¶¶ 17-27(footnotes omitted).

Voluntariness of confession is a legal question for federal court, not a factual question on which state conclusion is presumed to be correct. *Miller v. Fenton*, 474 U.S. 104 (1985). Of course the underlying historical facts as determined by the state courts are presumed to be correct. Under

28 U.S. C. §2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

Under *Colorado v. Connelly,* 479 U.S. 157(1986), there can be no involuntariness finding without police overreaching. Apart from being voluntary, the *Miranda* waiver must also be "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Smith v. Mitchell*, 567 F.3d 246 (6th Cir. 2009), quoting *Colorado v. Spring,* 479 U.S. 564, 573 (1987). Although the *Miranda* rule was not originally adopted as a constitutional ruling, the Supreme Court has since held it is required by the Constitution. *Dickerson v. United States*, 530 U.S. 428 (2000)**.**

In deciding the motion to suppress question, the Court of Appeals gave every indication of careful consideration of the factual record and the governing, clearly established, Supreme Court precedent. Petitioner has not cited or argued any way in which the Court of Appeals decision on the suppression question was an objectively unreasonable application of Supreme Court law. Therefore the first two Grounds for Relief should be denied on the merits.

**Ground Three: Sufficiency of the Evidence**

In his Third Ground for Relief, Petitioner argues there was insufficient evidence to convict him of the aggravated murder of Kaylee Schnurr and in particular that the State did not prove beyond a reasonable doubt that he intended to kill her.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In light of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), federal habeas courts must give two levels of deference to the state courts in deciding sufficiency of the evidence claims:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to

> convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. Ohio 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

The Court of Appeals decision on the sufficiency of the evidence is brief. It held:

> [*P28] Carovillano's second and final assignment of error alleges that the evidence used to convict him was insufficient and that the conviction was against the manifest weight of the evidence. Essentially, Carovillano argues that the prosecution failed to prove that he had purposefully caused the death of Kaylee. Not so.

> [*P29] Evidence, whether it be circumstantial or direct, is sufficient to support a conviction if a reasonable trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt, [citing *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991), an Ohio Supreme Court case recognizing and adopting the *Jackson v. Virginia* standard] . "The claim of insufficient evidence invokes an inquiry about due process. It raises a question of

> law, the resolution of which does not allow the court to weigh the evidence." In the instant case, once the confession was properly admitted, a reasonable trier of fact could have found beyond a reasonable doubt that Carovillano had purposefully caused the death of Kaylee. The conviction was sustained by sufficient evidence.

*State v. Carovillano*, 2007 Ohio 5459, ¶¶ 28-29, 2007 Ohio App. LEXIS 4811 (Ohio App. 1st Dist. Oct. 12, 2007). Petitioner admitted to Officer Kemper that, when Kaylee would not stop crying, he struck her in the head three or four times. *Id.* at ¶ 12. The examining physician, Doctor Jeffery Spatz, testified to injuries far more extensive than might be expected from what Petitioner admitted to: "he immediately noticed blunt trauma: 'I saw multiple bruises, a very large bruise on the back of [Kaylee's] head that was bleeding, bruises on her jaw,' her chest, and over the rest of her body." *Id.* at ¶ 8.

Aggravated murder in Ohio requires an intentional killing. Ohio Rev. Code § 2903.01 reads "No person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense." Once the State has defined the elements of the crime, it must also prove each of those elements by proof beyond a reasonable doubt. However, intention does not have to be proved by an admission of a defendant; circumstantial evidence can be sufficient. Where a defendant engages in repeated physical violence against an infant which is of such a nature and extent that any adult would know is likely to lead to death, that is sufficient evidence. See, e.g., *State v. Smith*, 97 Ohio St. 3d 367, 780 N.E. 2d 221(2002). While Petitioner may have instantly regretted his actions, as shown by his immediate expressions of remorse, that does not eliminate the prior intent.

In this case, the three-judge panel could reasonably have found intent to kill beyond a reasonable doubt and the Court of Appeals application of *Jackson v. Virginia* to the trial court

decision was not an objectively unreasonable application of *Jackson.* Petitioner's Third Ground for Relief should be denied.

## Conclusion

The Petition for writ of habeas corpus should be denied on the merits. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

March 17, 2010.

s/ <b>Michael R. Merz</b><br>
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).